This is a controversy without action. C. S., 626.
It is agreed: "1. That the plaintiff was duly appointed by and qualified before the clerk of the Superior Court of Hertford County, on or about 16 May, 1929, as guardian of Harry Newsome, incompetent veteran of the World War, and has ever since been and is now the duly appointed and acting guardian of said veteran.
"2. That John A. Shaw, W. C. Ferguson, C. T. Whitley, B. N. Sykes, J. M. Eley, and T. W. Sears are members of and constitute the board of commissioners of Hertford County, North Carolina.
"3. That John A. Northcott is the duly appointed, elected, and acting county accountant and fiscal agent of Hertford County, and is charged by law, by virtue of his office, with the duties of setting up and keeping records of all tax levies made by said board of commissioners, of all obligations due to and by said county, keeping books and records of all receipts and disbursements of public moneys of said county, and of receiving, accounting for, and paying out, upon orders of said board, all tax and public moneys belonging to said Hertford County; and that the said John A. Northcott is also register of deeds of Hertford County and exofficio clerk to the defendant board of commissioners, and was such register and clerk at the times hereinafter mentioned.
"4. That at the time of the appointment and qualification of the plaintiff as guardian aforesaid, the said Harry Newsome, incompetent veteran as aforesaid, owned no property or estate, other than claims against the United States Government for unpaid compensation and insurance due said veteran for services rendered said Government. *Page 354 
"5. That on the first day of April, 1931, the plaintiff had to his credit, as deposits in banks, the amount of $5,787.72, in his name as guardian aforesaid; all of which represented and in fact were the proceeds of collections made from deposits by said guardian of the original warrants or checks issued by said Government in payment to said veteran of compensation and insurance due the said veteran by the said Government; and on the said first day of April, 1931, said guardian also was in possession of certain interest bearing notes and bonds, payable to said guardian, and containing definite dates of maturity and repayment, not exceeding twelve months from the date of the execution of each respective note or bond, secured by conveyances of real estate, in trust, for the purposes aforesaid, in the aggregate amount of $13,390.28; the whole of which notes, bonds, and conveyances were executed by the makers thereof as evidence of and security for loans made by the said guardian from proceeds collected as aforesaid from said United States Government in payment of compensation and insurance due said veteran.
"6. That on the first day of April, 1932, the said guardian had to his credit, as deposits in banks, the amount of $3,868.42, in his name as guardian aforesaid; all of which represented and in fact were the proceeds of collections from deposits made by said guardian of the original warrants or checks issued by the said Government in payment to said veteran of compensation and insurance due the said veteran by the said Government; and on the said first day of April, 1932, said guardian was also in possession of certain interest bearing notes and bonds, payable to said guardian, containing definite and fixed dates of maturity and repayment, as stated in paragraph 5 hereof, which were secured by conveyances of real estate, in trust for the purposes aforesaid, in the aggregate amount of $17,157.58; the whole of which notes and bonds and conveyances were executed by the makers thereof as evidences of and security for loans made by the said guardian from proceeds collected from said U.S. Government in payment of compensation and insurance due the said veteran.
"7. That on the first day of April, 1933, the said guardian had to his credit, as deposits in banks, the amount of $3,704.76, in his name as guardian aforesaid; all of which represented, and in fact were, the proceeds of collections made from deposits by said guardian of the original warrants or checks issued by said Government in payment to said veteran of compensation and insurance due the said veteran by the said Government; and on the said first day of April, 1933, said guardian was also in possession of certain interest bearing notes and bonds, payable to said guardian, and containing fixed and definite dates of maturity and repayment, as aforesaid, secured by conveyances of real estate, in trust, for the purposes aforesaid, in the aggregate amount of $18,528.24; the whole of which notes and bonds and conveyances were executed by the *Page 355 
makers thereof as evidences of and security for loans made by said guardian from the proceeds collected from said U.S. Government in payment of compensation and insurance due the said veteran.
"8. That on the first day of April, 1934, the said guardian had to his credit, as deposits in banks, the amount of $987.48, in his name as guardian aforesaid; all of which represented and in fact were the proceeds of collections from deposits made by said guardian of the original warrants or checks issued by said Government in payment to said veteran of compensation and insurance due the said veteran by the said Government; and on the said first day of April, 1934, said guardian was also in possession of certain interest bearing notes and bonds, payable to said guardian, containing definite and fixed dates of maturity and repayment, as aforesaid, which were secured by conveyances of real estate, in trust, for the purposes aforesaid, in the aggregate amount of $18,217. 52; the whole of which notes, bonds, and conveyances were executed by the makers thereof as evidences of and security for loans made by the said guardian from proceeds collected from said U.S. Government in payment of compensation and insurance due the said veteran.
"9. That on the first day of April, 1935, the said guardian had to his credit, as deposits in banks, the amount of $2,730.93, in his name as guardian aforesaid; all of which represented and in fact were the proceeds of collections from deposits made by said guardian of the original warrants or checks issued by said Government in payment to said veteran of compensation and insurance due the said veteran by the said Government; and on the said first day of April, 1935, said guardian was also in possession of certain interest bearing notes and bonds, payable to said guardian, containing definite and fixed dates of maturity and repayment, as aforesaid, and secured by conveyances of real estate, in trust, for the purpose aforesaid, in the aggregate amount of $13,636.07; the whole of which notes, bonds, and conveyances were executed by the makers thereof as evidences of and security for loans made by said guardian from proceeds collected from said U.S. Government in payment of compensation and insurance due the said veteran.
"10. That on the said first days of April, 1931, 1932, 1933, 1934, and 1935, neither the said veteran nor the plaintiff, as guardian aforesaid, owned any real estate in Hertford County.
"11. That prior thereto, to wit: During the year 1930, the said veteran became the owner of an automobile, and certain other personal property, the whole of which has been regularly and yearly listed for taxation, and that the taxes due thereon have been duly and regularly paid.
"12. That in the said year 1930, the said guardian listed for taxation in said Hertford County the total property in his possession as guardian aforesaid owned by his said ward, in the aggregate amount of $20,380.92, made up of and including money in banks, solvent credits, and loans *Page 356 
secured by real estate conveyances as aforesaid, and in said year paid the taxes thereon.
"13. That thereafter, and during the year 1931, the plaintiff being informed that a ruling had been made and an opinion given by the Attorney-General of North Carolina that funds received by a guardian of a World War veteran as payments of adjusted compensation or insurance from the Federal Government and invested by the guardian in either a home or in real estate notes, were not subject to taxation, appeared before the defendant board of commissioners and made known to said defendant the ruling and opinion aforesaid, and requested the said board to reimburse and refund to the plaintiff the full amount of said 1930 taxes, and to relieve and discharge the plaintiff from the whole of said taxes.
"14. That said board of commissioners, pursuant to said information and request, made an order, at the time aforesaid, directing repayment and refund to the plaintiff of the whole of said taxes, and thereafter paid to the plaintiff the whole thereof.
"15. That in consequence of the opinion and ruling aforesaid, and in consequence of the order made by the said board of commissioners, the plaintiff in neither of the years 1931, 1932, 1933, 1934, nor 1935, further listed any property of said veteran in possession of the plaintiff for taxation in said Hertford County, and has for neither of said years, except as hereinafter set out, paid to said Hertford County any taxes thereon.
"16. That during the year 1935, to wit, on or about .... October of said year, the defendant board of county commissioners, acting by and through its county accountant, under due authority from said board of county commissioners, caused to be set up, listed, and assessed as taxable property of the said Harry Newsome all moneys received by the plaintiff from said U.S. Government as compensation and insurance due the said veteran, and all notes and bonds held and possessed by said guardian, as loans made by him from said compensation and insurance payments; and for each of the said years 1931, 1932, 1933, 1934, and 1935 assessed the said property and made levies thereon of taxes in favor of said county, according to the regular rates theretofore determined for each of said years, as follows, to wit:
 1931 Assessed Property Value Tax rate Taxes
Deposits in Banks ......................... $ 5,787.72 $1.43 $ 82.90 Solvent Credits — Real Estate Loans .. 13,390.28 1.43 191.47 --------- ------ ------ Totals for 1931 ................ $19,188.00 $1.43 $274.37 *Page 357 
 1932 Assessed Property Value Tax rate Taxes
Deposits in Banks ......................... $ 3,868.42 $1.59 $ 61.51 Solvent Credits — Real Estate Loans .... 17,157.58 1.59 272.79 --------- ----- ------- Totals for 1932 ..................... $21,026.00 $1.59 $334.30
1933
Deposits in Banks ......................... $ 3,704.76 $1.52 $ 56.31 Solvent Credits — Real Estate Loans .... 18,528.24 1.52 281.62 ---------- ----- ------- Totals for 1933 ..................... $22,233.00 $1.52 $337.93
1934
Deposits in Banks .......................... $ 987.48 $1.44 $ 14.22 Solvent Credits — Real Estate Loans ..... 18,217.52 1.44 262.54 ---------- ----- ------- Totals for 1934 ...................... $19,205.00 $1.44 $276.54
1935
Deposits in Banks ........................... $ 2,730.93 $1.54 $ 41.95 Solvent Credits — Real Estate Loans ...... 13,636.07 1.54 210.10 ---------- ----- ------- Totals for 1935 ....................... $16,367.00 $1.54 $252.05
"17. That the said taxes so assessed and levied by the said commissioners, for the years aforesaid, amounted in the aggregate to the sum total of $1,475.19, the payment of which was demanded by the said defendants, by notice in writing, addressed to the plaintiff. A copy of said notice and demand is hereto attached and made a part of this case agreed.
"18. That each of the items set out and shown in paragraph 16 as `Deposits in Banks,' for each of said years, represented and in fact were the collections from warrants or checks drawn and issued by the United States Government in payment of compensation and insurance due by it to plaintiff's ward, which said warrants or checks were deposited by plaintiff in such depositories and credited by them to the plaintiff's account as guardian aforesaid; and the amounts of said assessments and levies made up by said defendants on the items aforesaid and shown in said paragraph, represented and were in fact the unexpended and uninvested balances in the hands of the said guardian or payments aforesaid *Page 358 
by the U.S. Government of warrants or checks issued by it for compensation and insurance due by it to the said veteran.
"And the said items set out and shown in said paragraph 16 as `Solvent Credits and Real Estate Loans,' represented and were in fact the assessed value of notes and bonds secured by conveyances of real estate, executed and delivered and made payable to said guardian, as evidences of and security for loans made by said guardian to the makers thereof, out of the proceeds derived from said compensation and insurance warrants or checks.
"19. That the said assessments and levies of taxes for each of the said years 1931, 1932, 1933, 1934, and 1935, set out and shown in said paragraph 16, as `Deposits in Banks,' and as `Solvent Credits and Real Estate Loans,' were made up by said defendants in the year 1935, subsequent to the general levy of taxes for said year 1935, and subsequent to the month of July of said year upon admissions made by the plaintiff in a private conversation with the attorney for said defendants and the said John A. Northcott; that the same were correct sums total of money on deposit in banks and of real estate loans due to and in favor of plaintiff on the first day of April of each of said years; but the said assessments and levies were made in the absence of the plaintiff, without his consent, and without notice to show cause, if any he had, why the order made by said defendants as aforesaid in 1931 should not be revoked, or why the said property should not be assessed for taxation.
"20. That on 9 October, 1935, pursuant to the said written demand of the defendants for the payment by the plaintiff of the taxes aforesaid, the plaintiff, although protesting in writing the payment thereof, paid to the defendants the full amount of taxes so assessed and levied for each of said years, aggregating the sum total of $1,475.19, and obtained from defendants a receipt in writing showing both the payment thereof and the protest aforesaid.
"21. That thereafter, to wit: On 10 October, 1935, the plaintiff made demand on defendants in writing for the reimbursement, repayment, and return of the full amount of said sum of $1,475.19, so paid by the plaintiff to the defendants, upon the ground and for the reason that the taxes aforesaid were unlawfully and wrongfully exacted of the plaintiff, and that the said assessments under which the said levies were made were without warrant of law, illegal, and void; which demand the defendants refused, and that defendants have failed and refused to reimburse, repay, or refund to plaintiff the said sum, or any part thereof, and still refuse reimbursement or repayment of the whole or any part of said sum.
"The questions submitted upon the facts agreed are as follows, viz.:
"1. Where a guardian of a World War veteran receives from the Veterans' Bureau of the United States Government warrants or checks *Page 359 
issued by said Government in payment of adjusted compensation or insurance due the guardian's ward, and said warrants or checks are deposited by the guardian in a depository, collected by it, and the proceeds are credited in the guardian's account carried in such depository, are such deposits subject to taxation by county and municipal authorities?
"2. When such guardian carries in bank an account in his name as guardian of a World War veteran, consisting and made up of deposits therein of compensation or insurance warrants or checks issued and delivered by the U.S. Government; and such guardian thereafter draws upon his said account in making loans on real estate security, accepts notes and bonds as evidences of the loans, and deeds of trust as security therefor, and all such notes and bonds are made payable to the guardian, containing maturities of twelve months or less, and each and all of such notes and bonds are held and retained by the guardian as assets due his ward, are such notes and bonds the subject of taxation by county and municipal authorities?
"3. Where a board of county commissioners, pursuant to a ruling and opinion made and given by the Attorney-General of the State, holding as nontaxable all proceeds from compensation and insurance warrants or checks issued by the U.S. Government to veterans of the World War, releases and relieves a guardian of a World War veteran from payment of taxes assessed on money carried in banks and real estate loans, the whole of which being derived from compensation and insurance payments, can such board of commissioners thereafter and subsequent to this order aforesaid cause assessment and levy of taxes to be made on the same character of property discharged and released by its former order, without notice to or the consent of such guardian?
"4. Where a board of county commissioners, pursuant to and in accordance with a ruling of the Attorney-General of the State, made an order in 1931, releasing and discharging the plaintiff from payment of 1930 taxes on certain property held by such ruling to be exempt from taxation, can such board, in the year 1935, subsequent to the general tax levy made in said year, and subsequent to the month of July in said year, without notice to, consent of, or waiver by the taxpayer, set up, assess, and levy taxes on the property aforesaid for the year 1935, and for the four years next preceding such year?"
After due consideration of the questions presented in this controversy, on the facts agreed, the court was of opinion that plaintiff was not entitled to recover of the defendants the sum of $1,475.19, the amount paid by him as taxes for the years 1931, 1932, 1933, 1934, and 1935, and accordingly adjudged that plaintiff recover nothing of the defendant, and that he pay the costs of the proceeding. The plaintiff appealed to the Supreme Court. *Page 360 
The judgment in this case was predicated upon the affirmative answer to each of the questions presented to the Court on the facts agreed. If these answers were correct, the judgment must be affirmed; otherwise, the judgment must be reversed, or modified.
Affirmative answers to the first and second questions are in accord with the decision of this Court in Martin v. Guilford County, 201 N.C. 63,158 S.E. 847, 76 L.R.A., 978, and with the decision of the Supreme Court of the United States in Trotter v. State of Tennessee.290 U.S. 354, 78 L.Ed., 368.
The question presented in Martin v. Guilford County, supra, was whether property, real or personal, located in this State, and otherwise subject to taxation under its laws, is exempt from taxation because said property is owned by a veteran of the World War, who purchased and paid for the same with money which was paid to him by the Government of the United States under provisions of the Act of Congress for the relief of veterans of the World War. Answering this question, which involved primarily a construction of sections 454 and 618 of Title 38, U.S.C.A., it was said, "We think it clear that by the enactment of sections 454 and 618 of Title 38, U.S.C.A., Congress has not undertaken to exercise any control over the property now owned by the plaintiff, and that said property is not exempt from taxation by Guilford County, under the laws of this State, applicable to said property as well as to all other property in said county." The property owned by the plaintiff in that case was a lot of land and an automobile, both of which had been purchased by the plaintiff with money paid to him by the Government of the United States as compensation and insurance under the Act of Congress. The plaintiff was a veteran of the World War, and had paid the taxes levied on his property by Guilford County. It was held that plaintiff was not entitled to recover of the defendant the amount of said taxes, on the ground that his property was exempt from taxation by Guilford County under the provisions of sections 454 and 618 of Title 38, U.S.C.A.
Martin v. Guilford County, supra, is cited with approval by JusticeCardozo in Trotter v. State of Tennessee, supra. In his opinion in that case, he says: "Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced, Chicago Theological Seminary v.Illinois, 188 U.S. 662, 46 L.Ed., 641. On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers. The moneys payable to this soldier were unquestionably exempt till they came into his hands, or the hands of his guardian. *Page 361 McIntosh v. Aubrey, 185 U.S. 122, 46 L.Ed., 834. We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. Cf. McIntosh v. Aubrey, supra; State ex rel.Smith v. Shawnee County, 132 Kan. 233, 294 P. 915; Wilson v. Sawyer,177 Ark. 492, 6 S.W.2d 825, and Surrance v. Donna, 248 N.Y. 18,161 N.E. 315. Be that as it may, we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of `compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the State. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here."
We can see no distinction in law, for purposes of taxation, between stocks and bonds, and notes and bank deposits and other solvent credits. No such distinction is made by the laws of this State. It is provided by statute that personal property shall include: "All notes, bonds, accounts receivable, money on deposit, postal savings, securities and other credits of every kind belonging to citizens of the State over and above the amounts respectively owed by them, whether such indebtedness is due them from individuals or from corporations, public or private, and whether such debtors reside within or without the State." C. S., 7971 (18). This statute was enacted by the General Assembly of this State in obedience to the mandate of the Constitution of North Carolina, sec. 3 of Article V.
An affirmative answer to the third question was manifestly correct. If, as the plaintiff was informed, the Attorney-General of this State made a ruling and gave an opinion as set out in the facts agreed, such opinion was advisory only. It was given by the Attorney-General in the performance of his duty as prescribed by statute. C. S., 7694 (5). The ruling in accordance with the opinion was not authoritative. At most, it could be invoked by the defendants in support of their action in refunding to the plaintiff the amount paid by him as taxes for the year 1930. The defendants were under no legal duty to inform the plaintiff that they had been subsequently advised that the property belonging to his ward, and in his hands as guardian, was not exempt from taxation by Hertford County.
An affirmative answer to the fourth question was also correct. On the facts agreed the defendants were authorized by statute to list for taxation by Hertford County, for the years 1935, 1934, 1933, 1932, and *Page 362 
1931 — five years — the property belonging to the estate of his ward, which the plaintiff had failed to list for said years. C. S., 7971 (50). It is true that defendants did not comply strictly with the provisions of the statute relative to procedure, but there was a substantial compliance with these provisions. It is not contended by the plaintiff that he has been prejudiced by the failure of the defendants to comply with the letter of the statute. On the contrary, the plaintiff agrees that the property was properly listed and was properly assessed for taxation, unless it was exempt from taxation under the laws of the United States.
The Act of Congress of 12 August, 1935, is not applicable to this case. However, it is provided in said act that provisions with respect to exemption from taxation of payments due under the Act of Congress for the relief of veterans of the World War "shall not extend to any property purchased in part or wholly out of such payments." This is a legislative recognition of the construction by this Court and by the Supreme Court of the United States of sections 454 and 618 of Title 38, U.S.C.A. and supports the decision in the instant case.
There is no error in the judgment. It is
Affirmed.