THE HOLLAND GROUP, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF
ADMINISTRATION, STATE CONSTRUCTION OFFICE, Respondent

No. COA97-357

(Filed 15 September 1998)

### 1. Appeal and Error— appellate rules—multiple violations— double costs

Double costs were assessed against an appellant who committed multiple violations of the Rules of Appellate Procedure, including failing to refer to the transcript or record in the assignments of error and failing to refer to the assignments of error following each question presented.

### 2. Administrative Law— final agency decision—timeliness

The trial court did not err by concluding that a final agency decision was not issued in a timely manner under N.C.G.S. § 150B-44 where a recommended decision by an administrative law judge was transferred to the Department of Administration for Final Agency Decision; the Department entered a Notice of Pending Final Agency Decision containing a statement that the Department had received the official record in the case on 1 August 1995; on 31 October, the Department extended the time for the Final Agency Decision to December 29, stating that the tape recordings of testimony before the ALJ had not been received; and the Decision entered on 13 May stated that the tapes were received on November 14, that the record became complete at that point, and that the time for making the Final Agency Decision had been extended to May 13 due to the lack of tapes and for good cause shown in that the Department's general counsel had been ill. The plain language of N.C.G.S. § 150B-44 indicates the section is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay. Given the precise language of N.C.G.S. § 150B-44 and the principles of equity, the Department is estopped from denying it received the record on 1 August. Even if it were not estopped from claiming 14 November as the date of the receipt of the official record, it would be unfair and unjust to allow the Department to deny the self-imposed deadline of December 29; the Department's attempt at retroactive extension of either the statutory or its subsequent self-imposed deadline cannot be countenanced.

### 3. Administrative Law—ALJ recommended decision—final agency decision—not timely

Although the Department of Administration took issue with the determination of an Administrative Law Judge (determined by the trial court to be the final decision) that petitioner be allowed to produce a "true and accurate amount" of extended field overhead in a construction dispute, the Department cited no supporting authority and the assignment of error was deemed abandoned. Moreover, it appears that the trial court properly followed N.C.G.S. § 150B-44 in that the agency is considered to have adopted the ALJ's recommended decision as the final decision if a final decision is not timely made.

Appeal by respondent from judgment filed 18 December 1996 by Judge James U. Downs in Macon County Superior Court. Heard in the Court of Appeals 30 October 1997.

*Jones, Key, Melvin & Patton, P.A., by Fred H. Jones, for petitioner-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General D. David Steinbock, for respondent-appellant.*

JOHN, Judge.

Respondent North Carolina Department of Administration, State Construction Office (the Department) appeals the trial court's order reversing the Department's Final Agency Decision (the Decision). The Department contends the trial court erred by (1) concluding the Decision was not issued in a timely fashion under N.C. Gen. Stat. § 150B-44 (1995); and (2) ordering "that the recommended decision of the Administrative Law Judge . . . be entered as the Final Agency Decision." We affirm the trial court.

Pertinent factual and procedural information includes the following: In 1992, petitioner Holland Group, Inc. (Holland) was awarded the bid to construct a youth home in Macon County for the Division of Youth Services (DYS) of the North Carolina Department of Human Resources. The home was completed in September 1993, and final arrangements for payment by DYS to Holland were in progress. The project architect, Steven Schuster, determined Holland had not completed work by the contractual deadline and imposed liquidated damages in an amount totaling $18,000.

HOLLAND GROUP v. N.C. DEPT. OF ADMINISTRATION

[130 N.C. App. 721 (1998)]

Holland sought a hearing on the liquidated damages issue as well as on its claim for extended field overhead in the amount of $20,816. On 17 October 1994, Speros J. Fleggas, Director of the State Construction Office, reduced the amount of liquidated damages to $15,200 and decreed that Holland should receive no extended field overhead. Holland thereafter requested a contested case hearing before an administrative law judge (ALJ). Following a two-day evidentiary hearing, the ALJ issued a recommended decision 1 June 1995, concluding the State Construction Office had erred in assessing liquidated damages of $15,200 and recommending that the "Respondent allow the Petitioner the Extended Field Overhead in a true and accurate amount to be determined after review of the Petitioner's records."

The recommended decision of the ALJ was subsequently transferred to the Department for Final Agency Decision. On 7 August 1995, the Department entered a "Notice of Pending Final Agency Decision" (the Notice), containing a statement that the Department had "received the Official Record in the . . . case on August 1, 1995." On 31 October 1995, the Department filed an "Extension of Time for Final Agency Decision" (the Extension) pursuant to G.S. § 150B-44, asserting that tape recordings of testimony before the ALJ had not been received by the Department. The Extension provided that "the time limit for the making of the final agency decision in this matter is extended until Friday, December 29, 1995."

However, the Decision was in actuality entered 13 May 1996 and provided, *inter alia*, as follows:

Parts of the official record of the case were received on August 1, 1995, but said record did not include tapes of the hearing held in the matter nor a transcript of the same. After request to the Office of Administrative Hearings, tapes of the hearing were received on November 14, 1995, and the Official Record became complete at that point. . . . Pursuant to N.C.G.S. § 150B-44, the time for making this Final Agency Decision has been extended by the undersigned up to and including this 13th day of May, 1996, due to the lack of tapes described above, and for the good cause shown, which the undersigned hereby finds, that the General Counsel for the Department of Administration is responsible for reviewing all contested cases, Recommended Decisions, and Official Records . . . that said General Counsel was ill with cancer, undergoing radiation, chemotherapy, and two surgeries, until February

7, 1996; and that additional time was needed by him to review this and other matters, requiring an extension until May 13, 1996.

The Decision upheld the directive of the State Construction Office.

On 12 June 1996, Holland filed a petition for judicial review in Macon County Superior Court, asserting the Decision was neither rendered in a timely fashion nor supported by substantial evidence in light of the whole record. By consent of the parties, the timeliness issue was accorded priority. In a judgment filed 18 December 1996, the trial court ruled the Decision was not timely issued as required by G.S. § 150B-44 and that the recommended decision of the ALJ thus, by operation of law, became the Final Agency Decision. The Department appeals.

**[1]** As a preliminary matter, we note the Department has committed multiple violations of our Rules of Appellate Procedure (the Rules). *See Shook v. County of Buncombe*, 125 N.C. App. 284, 286, 480 S.E.2d. 706, 707 (1997) (the Rules "are not merely ritualistic formalisms, but are essential to our ability to ascertain the merits of an appeal").

First, N.C.R. App. P. 10(c)(1) provides that an assignment of error is sufficient "if it directs the attention of the appellate court to the particular error about which the question is made, *with clear and specific record or transcript references.*" (Emphasis added). The Department's assignments of error make no reference whatsoever to the record or transcript. Further, the Department has violated N.C.R. App. P. 28(b)(5), which requires that:

[i]mmediately following each question [presented] shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal.

The Rules are mandatory, and failure to comply therewith may result in dismissal of an appeal. *Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984). Notwithstanding, we elect in our discretion to consider the instant appeal on its merits. *See* N.C.R. App. P. 2. However, in view of the ever increasing volume of appeals considered by this Court and in the spirit of encouraging compliance with the appellate rules, we also elect in our discretion to assess double costs against the Department. *See* N.C.R. App. P. 35(a) (if a judgment is affirmed, costs shall be taxed against the appellant "unless otherwise ordered by the court").

[2] As an appellate court reviewing the order of a trial court regarding a final agency decision our duty is to examine the court's order for error of law. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). The primary issue before us is whether the trial court properly interpreted G.S. § 150B-44 in ruling the Decision was rendered outside the permissible statutory time frame. Statutory interpretation presents a question of law. *See, e.g., McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 288, 444 S.E.2d 487, 490, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994).

G.S. § 150B-44 is contained within the North Carolina Administrative Procedure Act (APA) and provides in pertinent part as follows:

> Unreasonable delay on the part of any agency or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge. An agency . . . has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 90 days. . . . If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's recommended decision as the agency's final decision.

*Id.*

Because the primary purpose of the APA is to provide procedural protection for persons aggrieved by an agency decision, the provisions thereof are to be "liberally construed . . . to preserve and effectuate such right."*Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 594, 447 S.E.2d 768, 783 (1994) (citations omitted). The plain language of G.S. § 150B-44 indicates the section is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay.

On appeal, the Department challenges the trial court's determination it failed to comply with the requirements of G.S. § 150B-44. Because the record before it was not complete until its 14 November 1995 receipt of tape recordings of testimony before the ALJ, the

Department argues, it was statutorily accorded ninety days from that date to render a decision. The Department further claims entitlement to an additional ninety days, or through 14 May 1996, based upon the affliction of its counsel with a serious medical condition which the Secretary of the Department deemed "good cause shown." While sympathetic with the fact its counsel had contracted a serious disease, we believe the Department's reasoning is flawed.

Since the Department has attempted to deny its previous representations concerning the pertinent dates, it is necessary to consider the doctrine of estoppel. Preliminarily, we note that an administrative agency of the State is "not subject to an estoppel to the same extent as a private individual or a private corporation." *Meachan v. Board of Education*, 47 N.C. App. 271, 279, 267 S.E.2d 349, 354 (1980). However,

an estoppel may arise against a [governmental entity] out of a transaction in which it acted in a governmental capacity, if an estoppel is necessary to prevent loss to another, and if such estoppel will not impair the exercise of the governmental powers of the [entity].

*Id.* (citation omitted). Suffice it simply to express our determination that application of the doctrine of estoppel herein would not impair the exercise of the Department's governmental powers. *See id.*

Estoppel "rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result." *Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). As our Supreme Court has said:

[i]n its broadest and simplest sense, the doctrine of estoppel is a means of preventing a party from asserting a legal claim or defense which is contrary to or inconsistent with his prior actions or conduct. The underlying theme of estoppel is that it is unfair and unjust to permit one to pursue an advantage or right which has not been promoted or enforced prior to the institution of some lawsuit.

*Godley v. County of Pitt*, 306 N.C. 357, 360, 293 S.E.2d 167, 169 (1982) (citations omitted). Bearing these principles in mind, we examine the circumstances *sub judice*.

In the Notice, the Department unequivocally acknowledged receipt of "the Official Record in the above-referenced contested

case on August 1, 1995." In its argument to the trial court and on appeal to this Court, however, the Department has sought to disavow this earlier representation and designate 14 November 1995 as the date it received the official record.

Detrimental reliance need not be established to invoke the doctrine of "quasi" estoppel, as opposed to "equitable" estoppel. *Id.* at 361, 293 S.E.2d at 170. Nonetheless, bearing the official caption of the Department, the signature of the Secretary of Administration, a filing stamp from the Attorney General's Office, Department of Administration Division, and a certificate of service, the Notice may fairly be characterized as reliable. Upon limited inquiry, the Department could have confirmed possession of the tape-recorded testimony. Holland, on the other hand, lacked the facility to ascertain whether or not the Department had indeed received the complete record, but rather accepted the Department's official assurance and anticipated a decision no later than one hundred and eighty days from 1 August 1995. Given the precise language of G.S. § 150B-44 and the principles of equity, we hold the Department is estopped from denying it received the record on 1 August 1995. Accordingly, its first assignment of error is unfounded.

Notwithstanding, the Department cites 58 Op. Att'y Gen. 85 (1988), an Opinion of the Attorney General, in support of its contention the time period under G.S. § 150B-44 did not begin to run until 14 November 1995, the date upon which it received the tape recordings of testimony before the ALJ. Assuming *arguendo* an Attorney General's Opinion is persuasive authority, *see Lawrence v. Comrs. of Hertford,* 210 N.C. 352, 361, 186 S.E. 504, 509 (1936), *rev'd on other grounds,* 300 U.S. 245, 81 L. Ed. 623 (1937) (Opinion of Attorney General is "advisory only"), the Department's reliance upon such is misplaced. The Opinion in question simply states that tape recordings of a contested case which has not been transcribed must be included in the official record prepared by the Office of Administrative Hearings pursuant to N.C. Gen. Stat. § 150B-37(a)(3), and forwarded to the final agency decision maker pursuant to N.C. Gen. Stat. 150B-37(c). *See* 58 Op. Att'y Gen. 85.

Even were the Department not estopped from claiming 14 November 1995 as the date of receipt of the official record, we note its subsequent assertion in the Extension that "the time limit for the making of the final agency decision in this matter is extended until Friday, December 29, 1995." This extension was signed by the

Secretary of Administration, filed in the Attorney General's Office, and a Certificate of Service was attached thereto. Without question, it would be "unfair and unjust," *Godley*, 306 N.C. at 360, 293 S.E.2d at 169, to allow the Department thereafter to deny the self-imposed deadline it formally communicated to Holland.

Finally, accepting 14 November 1995 as the date of the Department's receipt of the record, the Department was allowed either until 29 December 1995, the date imposed by the Extension, or 90 days from the receipt date under G.S. § 150B-44, *i.e.*, until 12 February 1996, to render its Final Decision or obtain an additional extension. However, the next document appearing in the record is the Decision issued 13 May 1996, a solitary day shy of one hundred and eighty days from 14 November 1995, almost six months after 29 December 1995, and three months following 12 February 1996. Nonetheless, the Decision purported to extend the Department's deadline until the date thereof for "good cause."

We cannot countenance the Department's attempt at retroactive extension of either the statutory or its self-imposed time limitations. First, such action appears contrary to the purport of G.S. § 150B-44, *i.e.*, protection from unreasonable delays. *See Empire Power*, 337 N.C. at 594, 447 S.E.2d at 783. In addition, in view of the previous advance written notice of extension of the deadline for "good cause," it would be neither "unfair [nor] unjust," *Godley*, 306 N.C. at 360, 293 S.E.2d at 169, to hold the Department to similar notification of any subsequent extension for "good cause."Most significantly, G.S. § 150B-44 allots ninety days from receipt of the record within which an agency may render a final decision in a case. The section further provides that the agency may extend that time limitation "for an additional period of up to 90 days." G.S. § 150B-44. Pointedly, the statute does not allow for "additional *periods*," thus limiting the agency to a *single* extension, which the Department herein previously obtained 31 October 1995.

In short, the trial court did not err in concluding the Decision was not issued in a timely manner under G.S. § 150B-44.

[3] In its second argument, the Department takes issue with the leave granted Holland to produce a "true and accurate amount" of extended field overhead. The Department maintains extended field overhead should not have been allowed in the absence of evidence showing entitlement to a specific amount. However, the Department cites no supporting authority for this proposition, and we deem its

BRUCE-TERMINIX CO. v. ZURICH INS. CO.

[130 N.C. App. 729 (1998)]

second assignment of error abandoned. *See* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned"). In any event, it appears the trial court properly followed the mandate of G.S. § 150B-44:

> If an agency . . . has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's recommended decision as the agency's final decision.

Affirmed; double costs taxed to respondent-appellant.

Judges MARTIN, John C., and SMITH concur.