OCCANEECHI BAND OF THE SAPONI NATION, Petitioner v. NORTH CAROLINA COMMISSION OF INDIAN AFFAIRS, Respondent

No. COA00-561

(Filed 21 August 2001)

1. **Administrative Law— final agency decision—deadline for agency action**

The trial court erred by finding that N.C.G.S. § 150B-44 is merely presumptive where petitioner sought recognition as an Indian tribe; an administrative law judge recommended that respondent Commission of Indian Affairs grant recognition; respondent denied that recognition; and petitioner contended that the administrative law judge's recommended decision had by then become the final agency decision. The plain language of N.C.G.S. § 150B-44 provides that an Article 3 agency has the longer of 90 days from the day the official record is received by the agency or 90 days after its regularly scheduled meeting to issue its final decision, with two provisions for extensions, and that the administrative law judge's recommended decision then becomes the final agency decision. There is no ambiguity in the statutory language that would give the trial court need to further explore legislative intent.

2. **Administrative Law— delayed final agency decision—recommended decision as final decision**

An administrative law judge's recommended decision that petitioner be recognized as a North Carolina Indian Tribe became the final agency decision where the official record was transmitted to the Commission of Indian Affairs on 26 January 1999, no decision was made at the next regularly scheduled meeting on 11 March, the 90-day deadline of N.C.G.S. § 150B-44 expired on 9 June, petitioner agreed to a two-day extension to the next regu-

larly scheduled meeting on 11 June, a vote was taken at that meeting rejecting the recommended decision, and the decision was issued in writing on 11 July. A final agency decision is not made until it is in writing and neither party contends that there was an express agreement to an additional extension. The Commission invoked its statutory authority to extend the deadline "for good cause," citing the complexity of the issues and the length of the recommended decision, but lacked the authority to retroactively extend the statutory deadline; the agreement for the two-day extension only stated that the Commission could hear the matter and make its final decision at the 11 June meeting; and petitioner did not consent by lack of objection because it notified the Commission three days after the hearing that the recommended decision had become the law of the case and filed a motion for relief in superior court stating the same thing a month after the hearing.

Appeal by petitioners from judgment entered 7 February 2000 by Judge Henry V. Barnette, Jr. in Orange County Superior Court. Heard in the Court of Appeals 14 March 2001.

*McSurely & Osment, Alan McSurely and Ashley Osment, for petitioners-appellants.*

*Michael F. Easley, Attorney General, by D. David Steinbock, Assistant Attorney General, for the State.*

BIGGS, Judge.

This appeal arises from the trial court's order affirming the Final Agency Decision of the North Carolina Commission of Indian Affairs which denied tribal recognition to the Occaneechi Band of the Saponi Nation. For the reasons stated herein, we reverse the decision of the trial court and remand this matter for an order consistent with this opinion.

Pertinent facts and procedural history are as follows: In January 1990, the Eno Occaneechi Indian Association petitioned the North Carolina Commission of Indian Affairs (Commission) to be recognized as a North Carolina Indian tribe. This petition was referred to the Recognition Committee of the Commission, whose staff reviewed and supplemented the petition with independent research. In 1994, during the review process, the "Eno Occaneechi Indian Association" held an annual meeting and changed the name of the Association to

the "Occaneechi Band of the Saponi Nation." (Occaneechi). After several years of review and deliberation, on 24 August 1995, the Recognition Committee voted to deny State recognition to the Occaneechi, citing petitioner's failure to meet the required five of eight criteria necessary for such recognition and their failure to establish heritage to an Indian tribe indigenous to North Carolina for at least the last 200 years. The Occaneechi appealed to the Full Commission, which subsequently voted to uphold the decision of the Recognition Committee.

On 3 January 1996, the Occaneechi filed a petition for contested case hearing with the Office of Administrative Hearings. The matter came on for hearing on 24 February 1997 before an administrative law judge (ALJ). After one day of hearing, the parties requested and agreed to have the matter heard by a mediator. However, after approximately a year and a half, the mediation reached an impasse, and the matter proceeded to hearing before the ALJ. The hearing concluded on 28 July 1998. After considering the testimony and evidence presented, on 7 December 1998, the ALJ recommended that the Commission grant tribal recognition to the Petitioners. The ALJ's Recommended Decision along with the official record was transmitted to the Commission on 27 January 1999. A hearing was held on 11 June 1999. On 11 July 1999, the Commission issued its Final Agency Decision denying the Occaneechi's petition for tribal recognition.

On 16 August 1999 the Occaneechi filed a petition for review with Orange County Superior Court. Upon review of the record and the agency's final decision, the trial court affirmed the Commission's decision and ordered that judgment be granted in favor of Respondent, the North Carolina Commission of Indian Affairs. From this order, petitioner now appeals.

[1] In the record on appeal, petitioner sets forth five assignments of error. In its first assignment, petitioner contends that the trial court erred in its construction of N.C.G.S. § 150B-44 (1999) as applied in this case. Petitioner maintains that the pertinent portion of G.S. § 150B-44 is self-executing. Accordingly, when Respondent failed to issue a final decision on or before 11 June 1999, the Recommended Decision of the ALJ became the Final Agency Decision. We agree.

When reviewing a trial court's order regarding an agency decision, it is the duty of the appellate court to examine the order for

errors of law. *Pisgah Oil Co. v. Western N.C. Reg'l Air Pollution Control Agency*, 139 N.C. App. 402, 405, 533 S.E.2d 290, 293, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 111 (2000). The issue to be resolved in the present case is whether the trial court properly interpreted N.C.G.S. § 150B-44. Since statutory interpretation presents a question of law, the matter is properly before this Court. *N.C. State Bar v. Barrett*, 132 N.C. App. 110, 113, 511 S.E.2d 15, 17 (1999) (stating that an incorrect statutory interpretation constitutes an error of law).

In the case *sub judice*, the disputed language of G.S. § 150B-44 is as follows:

> An agency that is subject to Article 3 of this Chapter and is a board or commission has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings or 90 days after its regularly scheduled meeting, whichever is longer, to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 90 days. **If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's recommended decision as the agency's final decision.** Failure of an agency subject to Article 3A of this Chapter to make a final decision within 180 days of the close of the contested case hearing is justification for a person whose rights, duties, or privileges are adversely affected by the delay to seek a court order compelling action by the agency or, if the case was heard by an administrative law judge, by the administrative law judge.

The trial court, in affirming the decision of the Commission, stated that the statutory time limit in G.S. § 150B-44 was intended to be presumptive, not absolute, and therefore, if an agency can demonstrate reasonableness in issuing a final decision beyond the statutory limit, the agency is not considered to have adopted the recommended decision of the ALJ. As further support for its decision, the trial court noted that G.S. § 150B-44 must be construed in light of N.C.G.S. § 143B-406 (1999), which expressly grants the Commission authority to make decisions regarding tribal status. We find no support for the trial court's conclusions.

The rules of statutory construction are well established. It is the function of the judiciary to construe a statute when the meaning of a statute is in doubt. *In re Declaratory Ruling by N.C. Comm'r of Ins.*, 134 N.C. App. 22, 27, 517 S.E.2d 134, 139, *disc. review denied*, 351 N.C. 105, 540 S.E.2d 356 (1999).

> "In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are 'the language of the statute, the spirit of the act, and what the act seeks to accomplish.' "

*Id.* (quoting *Com'r of Insurance v. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d. 547, 561 (1980)). However,

> [w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*State v. Green*, 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998).

The plain language of G.S. § 150B-44 provides that an agency subject to Article 3, such as the respondent, has 90 days from the day the official record is received by the Commission or 90 days after its regularly scheduled meeting, whichever is longer, to issue its final decision in the case. This first 90 days can be extended for an additional 90 days under two specific circumstances: (1) by agreement of the parties and (2) for good cause shown. G.S. § 150B-44. The statute is clear that if a final decision has not been made "within these time limits" the agency is considered to have adopted the ALJ's recommended decision. *Id.* We find no ambiguity in this statutory language that would give the trial court need to further explore legislative intent.

Moreover, in *Holland Group v. N.C. Dept. of Administration*, 130 N.C. App. 721, 504 S.E.2d 300 (1998), this Court recognized that G.S. § 150B-44 has definite time limits. While the facts in *Holland* are distinguishable from those in the present case, the Court's interpretation of the subject statutory provision is relevant. The Court stated:

> G.S. § 150B-44 allots ninety days from receipt of the record within which an agency may render a final decision in a case. The section further provides that the agency may extend that time limitation "for an additional period of up to 90 days." G.S. § 150B-44. Pointedly, the statute does not allow for additional periods, thus limiting the agency to a single extension.

*Id.* at 728, 504 S.E.2d at 305. The Court reasoned that G.S. § 150B-44 is contained within the North Carolina Administrative Procedure Act, which has as its primary purpose is to "provide procedural protection for persons aggrieved by an agency decision." Thus, according to the Court, the provisions are to be "liberally construed . . . to preserve and effectuate such right." *Id.* at 725, 504 S.E.2d at 304. The Court in *Holland* further states "[t]he plain language of G.S. 150B-44 indicates the section is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay." *Id.* To interpret the statutory time limit as presumptive rather than absolute would undermine the stated purpose of the Act. Accordingly, we find that the trial court incorrectly interpreted G.S. § 150B-44 in concluding that the statutory time limits were merely presumptive.

Furthermore, we reject the trial court's assertion that G.S. § 150B-44 is in conflict with G.S. § 143B-406. When multiple statutes address a single matter or subject, the statutes must by construed *in pari materia,* "as together constituting one law," and harmonized to give effect to each statute whenever possible. *Williams v. Alexander County Bd. of Educ.,* 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998). If however, an irreconcilable ambiguity exists, the conflict should be resolved so as to effectuate the true legislative intent. *Petty v. Owens,* 140 N.C. App. 494, 499, 537 S.E.2d 216, 219 (2000), *disc. review denied,* 353 N.C. 379, 547 S.E.2d 16 (2001). Our reading of the two statutes results in no conflict.

Nor are we persuaded by respondent's argument that petitioner's sole remedy under G.S. § 150B-44 was to seek a court order compelling action by the agency or administrative law judge. To support this proposition, the respondent cites a 1976 case, *Stevenson v. Dept. of Insurance,* 31 N.C. App. 299, 229 S.E.2d 209, *disc. review denied,* 291 N.C. 450, 230 S.E.2d 767 (1976). In *Stevenson,* this Court held that the remedy for persons whose rights or privileges are adversely affected by unreasonable delay on the part of the agency, is to seek a court order to compel the agency to act. *Id.* at 303, 229 S.E.2d at 211;

*see also, Davis v. Vance County DSS,* 91 N.C. App. 428, 430, 372 S.E.2d 88, 89 (1988) (holding that the right to judicial intervention when a final decision is unreasonably delayed is the only remedy available to an aggrieved petitioner). However, *Stevenson* was decided before the legislature amended G.S. § 150B-44[1] in 1991. Unlike the pre-1991 version, the amendment specifically provides that if a Commission, subject to Article 3, fails to issue a final decision within the prescribed time, the recommended decision of the ALJ becomes the final decision. *See, Holland Group,* 130 N.C. App. 721, 504 S.E.2d 300 (upholding trial court ruling that when a final decision is not issued in a timely manner, the recommended decision of the administrative law judge becomes the final agency decision by operation of law).

Additionally, the amended statute distinguishes Article 3 agencies such as the Commission in question here, and agencies subject to Article 3A. Article 3A agencies are required by the statute "to seek a court order compelling action by the agency" if a final decision is not made in the time limit imposed in G.S. § 150B-44. Had the legislature intended for Article 3 agencies to seek a court order compelling compliance, it would so state. *See, In re Appeal of Bass Income Fund,* 115 N.C. App. 703, 706 446 S.E.2d 594, 596 (1994).

In conclusion, we hold that when an Article 3 agency fails to issue a final decision within the time limits set forth in G.S. § 150B-44, the recommended decision of the ALJ becomes the final decision in the case by operation of law.

Having concluded that the statutory limits in G.S. § 150B-44 are not merely presumptive as found by the trial court and further that no court action is needed where the time limits are not met for adoption of the ALJ's decision; we next consider whether the final decision of the Commission in the case *sub judice* was rendered within the time prescribed by the statute.

---

1. Compare statute prior to 1991 Amendment. N.C.G.S. § 150B-44 (1976) (repealed 1991) Right to judicial intervention when decision unreasonably delayed. Unreasonable delay on the part of any agency or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge. Except for an agency that is a board or commission, an agency's failure to make a final decision within 60 days of the date on which all exceptions or arguments are filed under G.S. 150B-36(a) with the agency constitutes an unreasonable delay. A board or commission's failure to make a final decision within the later of the 60 days allowed other agencies or 60 days after the board's or commission's next regularly scheduled meeting constitutes an unreasonable delay.

[2] The official record was transmitted to the Commission on 26 January 1999. The next regularly scheduled meeting was set for 11 March 1999. No decision was rendered at the March meeting. Ninety days from the March meeting was 9 June 1999, however, petitioner agreed to a two-day extension such that the hearing could be held on 11 June 1999 when the Commission was to have its next regularly scheduled quarterly meeting. The hearing was held on 11 June 1999 in accordance with this agreement and a vote was taken rejecting the ALJ's Recommended Decision. On 11 July 1999, the Commission issued its final decision, in writing[2], denying the Occaneechi's petition for tribal recognition. The issuance of the final decision clearly exceeded both the 90 days from the receipt of the record by the Commission and the 90 days from the next regularly scheduled meeting as prescribed by G.S. § 150B-44. As stated earlier, there are two circumstances by which the time limit can be extended for an additional 90 days: (1) by agreement of the parties and (2) for good cause shown.

Neither party asserts that there was an express agreement of the parties to an additional extension other than the two day extension discussed here. However, the Commission by stating what they deemed to be "good cause," argues that it properly invoked its authority to extend the deadline for issuing a final decision. *See*, G.S. § 150B-44 ("This time limit may be extended by the parties or, for good cause shown, by the agency.") The Respondent points to a paragraph in the Final Agency Decision:

> In order to allow an appropriate time to prepare and sign the Final Agency Decision document, the Commission through its Chairman found that the complexity of the case and the length of the Recommended Decision constitute good cause to extend the time for formal preparation, execution and service of this document for a period of 58 days, through and including 6 August 1999.

However, we find that respondent was without authority to unilaterally extend the deadline for issuing its final decision. In *Holland*, this Court rejected the attempt by an agency to retroactively extend the statutory time limit holding that "such action appears contrary to the purport of G.S. § 150B-44, *i.e.*, protection from unreason-

---

2. A final decision is not made until it is in writing. *In re Savings and Loan Assoc.*, 53 N.C. App. 326, 330, 250 S.E.2d 748, 750, *disc. review denied*, 304 N.C. 588, 291 S.E.2d 148 (1981).

able delays." 130 N.C. App. at 728, 504 S.E.2d at 305. Additionally, the final decision of the Commission, which memorialized the parties agreement regarding the two-day extension states that "both parties stipulated that the Commission could hear this matter *and make its final decision* at the June 11, 1999 meeting without violating N.C.G.S. § 150B-44." (emphasis added). *See*, N.C.G.S. § 150B-36(b) (1999) ("[a] final decision or order in a contested case shall be made by the agency in writing. . . ."). Here, as in *Holland*, "[w]ithout question, it would be unfair and unjust to allow the [agency] to deny the self-imposed deadline it formally communicated to [the petitioner]." *Id.* at 728, 504 S.E.2d. at 305 (citation omitted).

Respondent would contend that, in failing to object to the Commission's decision at the 11 June meeting to allow its Chairman, Paul Brooks to sign the order after the decision was reduced to writing, the petitioner consented to a further extension of the statutory deadline. We disagree.

On 14 June 1999, three days after the 11 June 1999 hearing, petitioner, through counsel, notified the Commission that although they had agreed to the earlier two-day extension for the convenience of the respondent, since no additional extension has been agreed to by the parties, the ALJ's Recommended Decision became the law of the case. When no decision had been issued a month after the hearing, the petitioner filed a "Motion for Relief" in Orange County Superior Court relaying their understanding that by the operation of law, the recommended decision was now the final decision.

We conclude that since the Commission did not issue its final decision in accordance with G.S § 150B-44, by operation of the statute, the recommended decision of the Administrative Law Judge became the final decision of the case as of 11 June 1999. Accordingly, we hold that the trial court erred in denying the Petitioner appropriate relief pursuant to G.S. § 150B-44.

Having determined that the Commission's failure to issue a timely final decision resulted in an automatic adoption of the Administrative Law Judge's Recommended Decision, we find it unnecessary to address Petitioner's remaining assignments of error.

Reversed and Remanded.

Judges GREENE and JOHN concurs.