ALBEMARLE MENTAL HEALTH CENTER, DEVELOPMENTAL DISABILITIES, SUB-
STANCE ABUSE SERVICES, Petitioner and N.C. COUNCIL OF COMMUNITY
MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE
PROGRAMS, INC., Petitioner-Intervenor v. N.C. DEPARTMENT OF HEALTH
AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, Respondent

No. COA02-635

(Filed 15 July 2003)

**1. Administrative Law— deadline for final agency decision—
extension—showing of good cause by agency—required**

An administrative agency did not extend the deadline for
issuing a final decision for good cause, and the decision of the
administrative law judge became the final decision, where the
agency simply issued a letter stating that the time frame for the
final decision was being extended. Grounds demonstrating good
cause for extending the deadline under N.C.G.S. § 150B-44 must
be stated.

**2. Administrative Law— authority of administrative law
judge—recommended decision adopted as that of agency**

Whether an administrative law judge exceeded his authority
was moot where the agency did not issue its decision within the
statutorily mandated time frame and the administrative law
judge's opinion was adopted as that of the agency.

Judge Levinson dissenting.

Appeal by respondent from judgment entered 24 January 2002 by
Judge Stafford Bullock in Wake County Superior Court. Heard in the
Court of Appeals 12 March 2003.

*The Twiford Law Firm, by John S. Morrison, for petitioner
appellee.*

*Poyner & Spruill, L.L.P., by Steven Mansfield Shaber, for
petitioner-intervenor appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General
Grady L. Balentine, Jr., for respondent appellant.*

TIMMONS-GOODSON, Judge.

The North Carolina Department of Health and Human Services,
Division of Medical Assistance ("respondent") appeals from the judg-

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

ment of the trial court declaring a final agency decision by respondent to be null and void. For the reasons stated herein, we affirm the judgment of the trial court.

The pertinent substantive and procedural facts of the instant appeal are as follows: On 29 June 2001, Albemarle Mental Health Center Developmental Disabilities, Substance Abuse Services ("petitioner") and N.C. Council of Community Mental Health, Developmental Disabilities and Substance Abuse Programs, Inc. ("petitioner-intervenor") filed a joint petition for judicial review of a final agency decision issued by respondent 30 May 2001. The 30 May 2001 final agency decision rejected a recommended decision by an administrative law judge, who determined respondent had unlawfully and arbitrarily withheld Medicaid reimbursements to petitioner in 1998. The recommended decision by the administrative law judge concluded that petitioner was entitled to 1.5 million dollars from respondent as reimbursement for deficient Medicaid payments.

On 22 January 2002, the petition for judicial review of the final decision by respondent came before the trial court. After reviewing the procedural facts of the case, the trial court determined that respondent had failed to issue its decision within the ninety-day time limit required under section 150B-44 of the North Carolina General Statutes. Because respondent did not timely enter its decision, the trial court concluded that respondent adopted the decision of the administrative law judge as its final decision as a matter of law, and that the 30 May 2001 decision purporting to reject the recommended decision by the administrative law judge was therefore of no effect. Accordingly, the trial court entered judgment declaring the 30 May 2001 decision by respondent to be null and void. From the judgment of the trial court, respondent appeals.

Respondent asserts that the trial court erred in declaring the 30 May decision void, in that respondent properly extended the deadline for issuing its final decision. Respondent further contends that the administrative law judge exceeded his authority in issuing his recommended decision. For the reasons stated herein, we affirm the judgment of the trial court.

[1] Respondent argues it complied with the statutory mandates for issuing a final decision under section 150B-44, and that the trial court erred in finding otherwise. During the time period relevant to the instant proceedings, section 150B-44 provided in pertinent part as follows:

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

Unreasonable delay on the part of any agency or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge. An agency that is subject to Article 3 of this Chapter and is not a board or commission has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 90 days. . . . If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's recommended decision as the agency's final decision.

N.C. Gen. Stat. § 150B-44 (1999).[1] Respondent is an Article 3 agency and thereby subject to the mandates of section 150B-44. *See* N.C. Gen. Stat. § 150B-1(c) (2001). It received the official record of the contested case hearing in the instant case from the Office of Administrative Hearings on 22 January 2001. Thus, the final decision by respondent was due in ninety days, on 23 April 2001. By letter dated 12 April 2001, respondent notified the parties that "the time frame within which the Final Agency Decision will be made is hereby extended for an additional period of 60 days." Respondent issued its final decision 30 May 2001. Respondent asserts that it properly extended the deadline for issuing its decision under the statutory mandates of section 150B-44. We disagree.

In interpreting section 150B-44, as with any statutory construction, the primary function of this Court is to "ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished." *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980). To determine legislative intent, we examine the language and purpose of the statute. *See id*; *Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 653, 551 S.E.2d 535, 538, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 575 (2001). It is moreover well established that where " 'the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to

---

1. Section 150B-44 has since been amended, shortening the applicable time period from ninety days to sixty days. The effective date of amendment, 1 January 2001, applies to cases arising after the instant case. *See* N.C. Sess. Laws 2000-190 § 14.

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

interpolate, or superimpose, provisions and limitations not contained therein.' " *State v. Green,* 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998) (quoting *In re Banks,* 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978)), *cert. denied,* 525 U.S. 1111, 142 L. Ed. 2d 783 (1999).

The primary purpose of the North Carolina Administrative Procedure Act is to "provide procedural protection for persons aggrieved by an agency decision" and its provisions are " 'liberally construed . . . to preserve and effectuate such right.' " *Holland Group v. N.C. Dept. of Administration,* 130 N.C. App. 721, 725, 504 S.E.2d 300, 304 (1998) (quoting *Empire Power Co. v. N.C. Dept. of E.H.N.R.,* 337 N.C. 569, 594, 447 S.E.2d 768, 783 (1994)). The specific purpose of section 150B-44 is to "guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay." *Id.* To that end, the statute requires a final agency decision to be issued within ninety days, and the failure of an agency to conduct its review and make a decision within the statutory time period is *prima facie* an unreasonable delay. *See, e.g.,* N.C. Gen. Stat. § 150B-44; *Occaneechi Band of the Saponi Nation,* 145 N.C. App. at 655, 551 S.E.2d at 539; *HCA Crossroads Residential Ctrs. v. N.C. Dept. of Human Res.,* 327 N.C. 573, 583-84, 398 S.E.2d 466, 473 (1990) (Whichard, J., dissenting). An extension of the ninety-day time period may occur only under two specific circumstances: (1) by agreement of the parties or (2) by the agency "for good cause shown." N.C. Gen. Stat. § 150B-44; *Occaneechi Band of the Saponi Nation,* 145 N.C. App. at 653, 551 S.E.2d at 538. The parties in the instant case did not agree to extend the deadline. Thus, the extension could only occur "for good cause shown." In its letter to the parties, respondent stated that it was "hereby extend[ing]" the ninety-day time deadline. Respondent offered no grounds for its action or other "good cause" to support the extension. Respondent argues that the requirement of "good cause shown" in section 150B-44 necessitates only that good cause to extend a deadline be shown *to* the agency rather than *by* the agency. Respondent asserts that, as an agency, its actions are presumed to be reasonable and lawful, and that it is not required to articulate any grounds for extension of the deadline under section 150B-44. We are not so persuaded.

As respondent notes, "the law presumes that a public official or governing body will discharge its duty in a regular manner and act within its delegated authority." *City of Raleigh v. Riley,* 64 N.C. App. 623, 636, 308 S.E.2d 464, 473 (1983). Further, under the North Carolina Administrative Procedure Act, respondent is prohibited from acting

70      IN THE COURT OF APPEALS

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

in an arbitrary or capricious manner. *See* N.C. Gen. Stat. § 150B-51(b) (2001). As such, respondent's interpretation of section 150B-44 would render the words "for good cause *shown*" superfluous. *See HCA Crossroads Residential Ctrs.*, 327 N.C. at 578, 398 S.E.2d at 470 (stating that "a statute must be construed, if possible, to give meaning and effect to all of its provisions"); *cf.* N.C. Gen. Stat. § 150B-4(a) (2001) (requiring an agency to issue a declaratory ruling "except when the agency for good cause finds issuance of a ruling undesirable"). Respondent argues that section 150B-44 requires it to have good cause to extend a deadline, yet such would be respondent's duty regardless of the statutory language of section 150B-44. The more reasonable interpretation of section 150B-44 is that, where respondent wishes to extend the ninety-day deadline, there must exist good cause to do so *and* respondent must state the grounds demonstrating such good cause. *Cf. Occaneechi Band of the Saponi Nation*, 145 N.C. App. at 656, 551 S.E.2d at 540 (noting that the agency informed the parties that good cause existed to extend the statutory deadline because of the complexity of the case). Because respondent failed to articulate any grounds for its decision, much less "good cause," the trial court did not err in concluding that respondent failed to properly extend the deadline. We note that, contrary to the views expressed in the dissent, our conclusion does not require an agency to seek judicial review of "good cause" before extending its deadline. Rather, an agency should merely articulate its grounds for extending the deadline to the parties. Whether or not these articulated grounds constitute "good cause" would then be one of the many aspects of an agency decision that may be reviewed by a trial court upon petition for judicial review. Respondent therefore did not issue its decision within the ninety-day deadline required under section 150B-44, and the recommended decision by the administrative law judge became the final decision in the case by operation of law. *See* N.C. Gen. Stat. § 150B-44; *Occaneechi Band of the Saponi Nation*, 145 N.C. App. at 655, 551 S.E.2d at 539; *Holland Group*, 130 N.C. App. at 729, 504 S.E.2d at 306. We overrule respondent's first assignment of error.

[2] By its second assignment of error, respondent argues that the administrative law judge exceeded his authority in issuing the recommended decision. The recommended decision determined that respondent had unlawfully deviated from the statutory methodology used to calculate Medicaid reimbursement in 1998, resulting in a reimbursement reduction of 1.5 million dollars to petitioner. In addition to ordering respondent to reimburse petitioner for the deficient Medicaid payments, the recommended decision states that "[a]ll

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

future calculations for Medicaid reimbursement rates for 'Y-Code' reimbursement services should be based on the actual unit cost and weighted averages experienced by the petitioner." Because the recommended decision mandates the manner in which future reimbursement rates are to be calculated, respondent argues that the administrative law judge exceeded his statutory authority. We have determined, however, that by failing to issue its decision within the statutorily-mandated time frame, respondent adopted the recommended decision as its own final decision by operation of law. The decision declaring future calculation methods for Medicaid reimbursement is now, therefore, the decision of the agency and not of the administrative law judge. Respondent's assertion that the recommended decision exceeds the administrative law judge's authority is thus moot, and we overrule this assignment of error.

For the reasons stated herein, we affirm the judgment of the trial court.

Affirmed.

Judge WYNN concurs.

Judge LEVINSON dissents.

LEVINSON, Judge dissenting.

Because I conclude that the agency properly extended the time for entry of its final agency decision, I respectfully dissent.

This appeal requires us to determine the proper interpretation of N.C.G.S. § 150B-44, "Right to judicial intervention *when decision unreasonably delayed*" (2001). (emphasis added). The statute as it existed at the time of this action provided in relevant part that:

> Unreasonable delay on the part of any agency . . . in taking any required action shall be justification for . . . a court order compelling action by the agency[.] . . . An agency that is subject to Article 3 of this Chapter . . . has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings to make a final decision in the case.

> *This time limit may be extended* by the parties or, *for good cause shown, by the agency for an additional period of up to 90 days.* . . . If an agency subject to Article 3 of this Chapter has not

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's decision as the agency's final decision. . . .

(emphasis added).[2] The specific issue before this Court is the significance of the phrase "for good cause shown" within the statute. Upon consideration of longstanding principles of statutory construction, I conclude that the phrase "good cause shown" articulates the standard that the agency employs to determine whether an extension of time is appropriate in a given case.

"A cardinal principle governing statutory interpretation is that courts should always give effect to the intent of the legislature. The will of the legislature 'must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.' " *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996) (quoting *Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967)) (citation omitted). To determine the legislative intent, "[w]e first look to the words chosen by the legislature and 'if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings.' " *Union Carbide Corp. v. Offerman*, 351 N.C. 310, 315, 526 S.E.2d 167, 170 (2000) (quoting *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 896 (1998)). However, "where a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) (citing *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E.2d 797 (1948)).

G.S. § 150B-44 is found within the N.C. Administrative Procedure Act (APA), whose "primary purpose" is "to provide procedural protection for persons aggrieved by an agency decision[.]" *Holland Group v. N.C. Dep't of Administration*, 130 N.C. App. 721, 725, 504 S.E.2d 300, 304 (1998). I conclude that the title of G.S. § 150B-44 unambiguously articulates its general purpose: the protection of a litigant's rights where a final agency decision is "unreasonably delayed." However, within N.C.G.S. § 150B-44, the phrase "for good cause shown" is ambiguous, as it fails to indicate *how, or to whom*, the "good cause" should be shown. Therefore, it is necessary to consider the possible interpretations of the provision allowing an agency for good cause shown to extend by up to 60 days the period within which it must render its final agency decision.

___

2. Effective 1 January 2001, both the initial time period and the allowable extension period were shortened to 60 days.

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

I would reject an interpretation that the agency must appear before a superior court judge and submit evidence of "good cause" in order to obtain an extension of time. First, the statute *does not state* such a requirement. Where our legislature intends for the trial court to determine whether good cause has been shown, the statute invariably states so very plainly. For example, N.C.G.S. § 150B-45 (2001), the statute immediately following G.S. § 150B-44, states that "[f]or good cause shown, however, *the superior court may accept* an untimely petition." (emphasis added). "It is a well-settled principle of statutory construction that where a statute is intelligible without any additional words, no additional words may be supplied . . . and the courts . . . are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Camp*, 286 N.C. 148, 151-52, 209 S.E.2d 754, 756 (1974) (citation omitted).

Moreover, in all probability, the factors evaluated by an agency head in determining whether to take an extension of time generally involve in-house allocation of agency resources and personnel, setting of internal agency priorities, and assessment of the best response to unexpected employee absences. Thus, as a practical matter, the determination of whether there is "good cause" for an extension would not lend itself to judicial review. Nor would such a review serve the statutory purpose of preventing "unreasonable delay." Judicial review, with its attendant right to appeal, would likely lead to *delay* of the final agency decision. I would conclude that this Court is without authority to superimpose upon G.S. § 150B-44 the requirement that an agency must show its good cause to a judge before it may obtain an extension of time, and would further conclude that such a requirement would not further the purpose of the statute.

I would also reject the possibility that an agency must show to the petitioner, or must recite in the document taking an extension, the circumstances that the agency has determined constitute "good cause" for an extension. Again, the statute *does not state* such a requirement, and we are without authority to superimpose it upon the statutory language. Nor would such a requirement appear to serve much purpose, inasmuch as the petitioner lacks a forum to obtain review of the factual circumstances surrounding the agency's need for an extension.

I believe the statutory language is intended to draw a distinction between an extension sought by the *plaintiff* (which requires "agreement of the parties"), and an extension sought by the *agency* (to which it is entitled, without the plaintiff's agreement, provided the

ALBEMARLE MENTAL HEALTH CTR. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[159 N.C. App. 66 (2003)]

agency believes that good cause necessitates the extension). I would conclude, therefore, that the phrase "for good cause shown" refers to the standard the agency is to apply in determining whether to take an extension.

Because the agency's discretion is quite restricted, this interpretation does not undermine the statutory purpose of protecting litigants from unreasonable delay. The agency may obtain only one extension of time. *Holland Group v. N.C. Dep't. of Administration*, 130 N.C. App. 721, 728, 504 S.E.2d 300, 305 (1998) ("[p]ointedly, the statute does not allow for additional *periods*, thus limiting the agency to a *single* extension") (emphasis in original). Further, G.S. § 150B-44 is "self executing": that is, a decision by the ALJ automatically becomes the final agency decision if the agency fails to file its final decision within the statutory period. *Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 651, 551 S.E.2d 535, 537 (2001) ("the pertinent portion of G.S. § 150B-44 is self-executing . . . when Respondent failed to issue a final decision on or before [the deadline], the Recommended Decision of the ALJ became the Final Agency Decision.").

The substitution of a recommended decision of an ALJ for a state agency's final decision is a severe sanction. It is analogous to entry of a default judgment, which is not favored in North Carolina. *See Peebles v. Moore*, 48 N.C. App. 497, 504, 269 S.E.2d 694, 698 (1980), *modified and aff'd*, 302 N.C. 351, 275 S.E.2d 833 (1981) ("the law generally disfavors default judgments"). Therefore, imposition of this extreme penalty upon a state agency properly should be reserved for situations in which the agency has unreasonably delayed issuance of a decision. Accordingly, I find it significant that, in several recent cases affirming the judicial imposition of the ALJ opinion as the final agency decision, the evidence showed that the agency had unreasonably delayed its final opinion. *See, e.g., County of Wake v. Dep't of Env't & Nat. Res.*, 155 N.C. App. 225, 232, 573 S.E.2d 572, 579 (2002) (agency in violation of G.S. § 150B-44 "by taking multiple extensions of time in which to render its final agency decision" over a period of almost a year); *Occaneechi*, 145 N.C. App. 649, 551 S.E.2d 535 (agency failed to render final decision within extension period); *Holland Group v. N.C. Dep't of Administration*, 130 N.C. App. 721, 728, 504 S.E.2d 300, 305 (1998). In *Holland*, the agency attempted to take several extensions, ultimately "extending" the deadline retroactively at the time it issued its decision. This Court held:

We cannot countenance the [agency's] attempt at retroactive extension of either the statutory or its self-imposed time limitations. First, such action appears contrary to the [purpose] of G.S. § 150B-44, *i.e.*, protection from unreasonable delays. In addition, in view of the previous advance written notice of extension of the deadline for good cause, it would be neither unfair [nor] unjust, to hold the [agency] to similar notification of any subsequent extension for good cause.

(citation omitted). Thus, in prior appellate decisions upholding substitution of the ALJ recommendation for the final agency decision, the agency had, as a factual matter, been unreasonably dilatory in issuance of a decision.

However, in the instant case, there is no evidence that the agency improperly delayed issuance of its decision. Within the initial 90 day period, the agency notified the petitioner that it was extending the time for up to 90 days. The agency took only one extension, and issued its decision well within the extension period. The record contains no evidence that the agency was guilty of "unreasonable delay" in issuing a final agency decision. Thus, even assuming, *arguendo*, that the better practice might have been to inform the petitioner of the factual basis for the extension, I conclude that on these facts it would be unfair and contrary to the statute to impose upon the agency the extreme sanction of adoption of the recommendation of the ALJ. I would hold that the agency was entitled to take an extension, and that its letter to petitioner sufficiently informed petitioner that it was doing so. Accordingly, I would reverse the trial court and reinstate the decision of the HHR.