**HUNTINGTON MANOR OF MURPHY v. N.C. DEPT. OF HUMAN RESOURCES**

[99 N.C. App. 52 (1990)]

HUNTINGTON MANOR OF MURPHY, Petitioner v. NORTH CAROLINA
DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERV-
ICES, CERTIFICATE OF NEED SECTION, Respondent

No. 8910DHR904

(Filed 19 June 1990)

### 1. Hospitals § 2.1 (NCI3d) — denial of certificate of need — request for contested case hearing timely

A petition for a contested case hearing after the denial of an application for a certificate of need for a nursing home was timely under the statutes then in effect where it was received by the Department of Human Resources and by the Office of Administrative Hearings within thirty days of the agency's decision, although it was not filed by the Office of Administrative Hearings until two days later. N.C.G.S. §§ 131E-188(a) and 150B-23(a).

**Am Jur 2d, Hospitals and Asylums § 4; Licenses and Permits § 5.**

### 2. Hospitals § 2.1 (NCI3d) — certificate of need for nursing home — denial based on lack of access by low income people — denial improper

In acting on petitioner's request for a certificate of need for development of a nursing home, respondent erred in concluding that low income people would not have access to the nursing home and that petitioner's application for the certificate did not comply with N.C.G.S. §§ 131E-183(a)(3) and 13a, since respondent's findings consisted only of unrelated statistical information concerning the poverty rates in a geographical area, and Medicaid eligibility statewide and in Cherokee County based upon statistics reported in 1984 and obviously compiled during an earlier period; there were no findings of fact connecting these poverty rates and Medicaid eligibility to the conclusion about low income people; in its application petitioner stated that the proposed services would be available to all people without regard to income, race, sex, etc.; petitioner, in responding to a question to define "medically indigent," did so and then stated its proposed method of serving such persons; and there was no minimum income criterion for accepting patients.

Am Jur 2d, Hospitals and Asylums § 4; Licenses and Permits § 5.

APPEAL by petitioner from the decision entered 24 January 1989 by I. O. Wilkerson, designee of the Secretary of the Department of Human Resources. Heard in the Court of Appeals 7 March 1990.

On 16 October 1986, petitioner filed an application for a certificate of need for the development of a 30-bed nursing home facility in Murphy, North Carolina with the North Carolina Department of Human Resources, Division of Facility Services, Certificate of Need Section (hereinafter the agency). The agency denied the application on 26 March 1987.

Petitioner then filed a petition with the agency for a contested case hearing on 24 April 1987, which was subsequently filed in the Office of Administrative Hearings on 29 April 1987. The contested case hearing was held before Thomas R. West, Administrative Law Judge on 9 February and 10 February 1988. On 3 October 1988, Judge West recommended that the agency's decision be reversed and that petitioner receive its certificate of need.

On 24 January 1989, I. O. Wilkerson, Jr., Director of the Division of Facility Services, rejected the recommended decision and affirmed the agency's decision to deny petitioner's certificate of need application.

From the final agency decision affirming the denial of its certificate of need application on 24 January 1989, petitioner appeals.

*Harrell & Leake, by Larry Leake, for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James A. Wellons, for respondent-appellee North Carolina Department of Human Resources, Division of Facility Services, Certificate of Need Section.*

ORR, Judge.

Petitioner brings forth five assignments of error on appeal. For the reasons set forth below, we find that the Secretary's designee erred in denying petitioner's certificate of need application.

I.

[1] The first issue we must address is whether petitioner's appeal should be dismissed for lack of subject matter jurisdiction. Respondent argues that the appeal must be dismissed for lack of subject matter jurisdiction because the petition for a contested case hearing was not filed in a timely manner.

The agency initially denied petitioner's application on 26 March 1987. Petitioner's request for a contested case hearing was *received* by the Office of Administrative Hearings on 27 April 1987, and *filed* on 29 April 1987. There is no evidence in the record before us which explains the two-day delay between the receipt and filing of petitioner's request. Petitioner's request was also served by mail on the Division of Facility Services (the Department) on 24 April 1987, and received on 27 April 1987.

The applicable statutes in effect at the time of petitioner's request for a contested case hearing are N.C. Gen. Stat. § 131E-188(a) (1986) and § 150B-23(a) (1986 Special Supp.). Section 131E-188(a) is set forth as follows:

(a) After a decision of the Department to issue, deny or withdraw a certificate of need or exemption, any affected person shall be entitled to a contested case hearing under Article 3 of Chapter 150A of the General Statutes, if the Department receives a request therefor within 30 days after its decision.

N.C. Gen. Stat. § 131E-188(a) (1986).

Section 150B-23(a) states:

Except as provided in subsection (a1), all contested cases other than those conducted under Article 3A of this Chapter shall be commenced by the filing of a petition with the Office of Administrative Hearings.

N.C. Gen. Stat. § 150B-23(a) (1986 Special Supp.).

We note that Chapter 150A referred to in § 131E-188(a) above was recodified as Chapter 150B, effective 1 January 1986. We further note that there is no time limit set for filing a contested case hearing request under § 150B-23(a). The only time limit set by either statute is the 30-day time limit under § 131E-188(a). This limit states only that the request must be *received* by the Department within 30 days of its decision.

HUNTINGTON MANOR OF MURPHY v. N.C. DEPT. OF HUMAN RESOURCES

[99 N.C. App. 52 (1990)]

Under the above statutes, we therefore find that petitioner's request was *received* within the 30-day time limit. The agency action denying petitioner's request was taken on 26 March 1987. The 30-day period in which petitioner had to submit its request for a contested case hearing with the Department ended on Saturday, 25 April 1987. Because this day was a holiday, the next business day for the Department to receive petitioner's request was on Monday, 27 April 1987, the day the Office of Administrative Hearings and the Department (Division of Facility Services) received petitioner's request. *See generally*, N.C. Gen. Stat. § 1A-1, Rule 6(a) (1983).

Respondent argues that this Court should read the above statutes *in pari materia* and find that a petition for a contested case is not timely unless it is *filed* in the Office of Administrative Hearings within 30 days of the agency's decision. Even reading the statutes together, we are unable to find that the 30-day time limit for receipt of the request for a contested case hearing under § 131E-188(a) is equally applicable as a time limit for filing a petition with the Office of Administrative Hearings commencing a contested case under § 150B-23(a).

We note that this issue has been settled under the current statutory construction of §§ 131E-188(a) and 150B-23(a), which state that a request for a contested case hearing shall be *filed* with the Office of Administrative Hearings within 30 days of the agency's action. Under the current statutes, a request must be *filed* within 30 days, not just *received.*

Therefore, we hold that petitioner's appeal should not be dismissed for lack of subject matter jurisdiction because petitioner's request for a contested case hearing was received within the statutorily allotted 30 days under the above applicable statutes at the time of the request.

## II.

[2] The dispositive issue now before us is whether the Secretary's designee, I. O. Wilkerson (Director of the Division of Facility Services), erred in concluding that petitioner's certificate of need application was nonconforming to N.C. Gen. Stat. §§ 131E-183(a)(3) and (13)a. (hereinafter Criteria 3 and 13a). For the reasons set forth below, we hold that the Secretary's designee so erred. Criteria 3 and 13a are set forth as follows:

(3) The need that the population served or to be served by such services has for such services, and the extent to which all residents of the area, and in particular low income persons, racial and ethnic minorities, women, handicapped persons and other underserved groups, and the elderly, are likely to have access to those services.

. . .

(13) The contribution of the proposed service in meeting the health-related needs of members of medically underserved groups, such as low income persons, racial and ethnic minorities, women, and handicapped persons, which have traditionally experienced difficulties in obtaining equal access to health services, particularly those needs identified in the applicable health systems plan, annual implementation plan, and State Health Plan as deserving of priority. For the purpose of determining the extent to which the proposed service will be accessible, the Department shall consider:

a. The extent to which medically underserved populations currently use the applicant's proposed services in comparison to the percentage of the population in the applicant's service area which is medically underserved, and the extent to which medically underserved populations are expected to use the proposed services if approved.

N.C. Gen. Stat. §§ 131E-183(a)(3) and (13)a (1986).

The standard of review for an administrative decision is found in N.C. Gen. Stat. § 150B-51, effective 1 January 1986, which applies to all petitions for review filed on or before 1 September 1987. N.C. Gen. Stat. § 150B-51 (Cum. Supp. 1985 and 1987). Although petitioner's contested case hearing was not held until February 1988, petitioner *filed* its petition in April 1987. Therefore, the following section, § 150B-51, applies in this case:

Based on the record and the evidence presented in the court, the court may affirm, reverse, or modify the decision or remand the case to the agency for further proceedings.

N.C. Gen. Stat. § 150B-51 (Cum. Supp. 1985).

Our scope of review under § 150B-51 is commonly known as the "whole record" test, which requires the reviewing court to consider all of the evidence, including that which supports the

findings and that which is contradictory. *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citations omitted). The court must consider whether the administrative decision is supported by *substantial* evidence based upon the entire record as submitted. *Id.* The court is not allowed to replace the agency's judgment when there are two reasonably conflicting views, although the court could have reached a different decision had the matter been before it *de novo. Id.* The credibility of the witnesses and the resolution of conflicting testimony is a matter for the administrative agency to resolve, not the reviewing court. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300-01 (1980) (citations omitted).

Keeping these principles of law in mind, we now turn to whether there was substantial evidence to support the findings of fact and conclusions of law. Substantial evidence is considered more than a scintilla or a permissible inference, or relevant evidence which is adequate to support a conclusion. *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (citations omitted).

Petitioner argues in its brief that the evidence does not support the conclusions of law made by the Secretary's designee.

In its order, the Secretary's designee made the following conclusions of law:

9. Low income persons will not have adequate access to Huntington Manor.

10. Huntington Manor's application did not comply with Review criteria 3 and 13(a).

These conclusions of law are based upon the following findings of fact:

25. A document entitled *Estimate of Medically Indigent by HSA and County—1984* prepared by the Division of Facility Services, Department of Human Resources, shows that in 1984:

A. 25.4% of the people in Cherokee County had incomes below the federal poverty guidelines. Only six counties of the twenty-six located in HSA I (Western North Carolina) had higher poverty rates.

B. Cherokee has one of the highest poverty rates in HSA I.

C. When the number of people with incomes below the federal poverty guidelines that are eligible to receive Medicaid is subtracted from the number of people with incomes below the federal poverty guidelines, a number of people that are described as "medically indigent" by the Department of Human Resources is determined. 79.5% of the people with incomes below the federal poverty guidelines in Cherokee County are "medically indigent."

29. Although statistics were not introduced for the entire State, the statistics introduced by the Section show that in 1984, the average percentage of people with incomes below the poverty guidelines in HSA I, II, and III was 17.2%.

33. If that position is valid, a determination can be made of what percentage of days should be paid for by Medicaid at Huntington Manor if those days are to equal the state average.

A. The average percentage of patient days paid by Medicaid statewide is 75%. No evidence was introduced to show the average percentage of people with income levels below the poverty guidelines in North Carolina who are eligible to receive Medicaid. Evidence was introduced to show that percentage in HSA I and HSA I, II, and III in 1984.

B. In 1984, Cherokee County had a total estimated population of 19,978 people. Of Cherokee County's total population, 1,039 people (5.2%) were Medicaid eligible.

C. In 1984, the geographic area comprised of Health Service Areas I, II, and III had a total estimated population of 3,261,423 people. Of this total population for Health Service Areas I, II, and III, 172,841 people (5.3%) were Medicaid eligible.

34. The algebra follows:

A. $\dfrac{5.2\%}{x} = \dfrac{5.3\%}{75\%}$

B. 5.2% multiplied by 75% = 5.3 multiplied by x.

C. .039 = .53 (x)

D. x = .735 (74%)

We find that the above findings of fact do not support the conclusion of law that "Low income persons will not have adequate access to Huntington Manor." The above findings contain only unrelated statistical information concerning the poverty rates in a geographical area, medicaid eligibility statewide and in Cherokee County based upon statistics reported in 1984 and obviously compiled during an earlier period. There are simply no findings of fact connecting these poverty rates and Medicaid eligibility to the conclusion, as a matter of law, that "Low income persons will not have adequate access to Huntington Manor."

Moreover, there is substantial evidence to the contrary. In its application, petitioner stated, "The proposed services will be available to all persons without regard to income, race, ethnic background, sex, handicapped status, etc." Further, in response to a question to define "medically indigent," petitioner responded,

This facility would define 'medically indigent' as those persons who cannot afford the services of a nursing home as a private pay patient, a Medicare patient, or a third party insured patient. It is proposed that services be offered these patients through the participation by the facility and the patients through the participation by the facility and the patients in the Medicaid program.

Petitioner's witness, Kenneth Gummels, who submitted petitioner's application, testified that although he projected that Huntington Manor would serve 33 percent private paid patients, ten percent Veteran's Administration (VA) patients and 57 percent Medicaid patients, there is no minimum income criteria for accepting patients, and that patients are accepted as they apply for admission with no income-screening device. Mr. Gummels made it clear throughout his testimony that the above projected rates are projections only, and that these rates could change at any time depending on the demands and needs of the medically indigent or indigent population in Cherokee County. Respondent's statistical evidence to the contrary is speculative at best.

Therefore, we find that the evidence of record and the findings of fact do not support the conclusion of law that "Low income persons will not have adequate access to Huntington Manor."

For the same reasons, we find that the evidence of record and findings of fact numbers 25 through 34 do not support the

conclusion that "Huntington Manor's application did not comply with Review criteria 3 and 13(a)." There are no findings of fact to link the statistical findings above to this conclusion of law.

Moreover, the statistical evidence respondent presented on this issue again is a projection only. Petitioner presented evidence that the statistical percentages of occupancy rates in a 30-bed center such as Huntington Manor are subject to change at least three percentage points either way with only one patient change. For example, if a private patient moved to another facility, and a Medicaid eligible patient filled the existing vacancy, then the percentage of Medicaid eligible patients in the facility would be increased by three percent.

Further, none of the witnesses testified that they would expect any nursing home facility to serve individuals who had no source of income for long periods of time. Respondent's argument in its brief and in its line of questioning at the hearing imply that Criteria 3 and 13a include a requirement that a nursing home plan should serve a certain number of individuals with no source of income for an indefinite period of time. Mr. Gummels testified that Huntington Manor would serve such individuals until Medicaid eligibility could be established, but would not do so indefinitely, because it would unfairly increase private pay rates. We do not find such policy unreasonable or out of compliance with the above criteria.

For the reasons set forth above, we hold that there is not substantial evidence under the "whole record" test in § 150B-51 to support the findings of fact and conclusions of law in question. Therefore, we find that the Secretary's designee erred in denying Huntington Manor's application for a certificate of need on the above findings of fact and conclusions of law.

Pursuant to § 150B-51, we reverse the above decision because there is not substantial evidence to support the above findings of fact and conclusions of law, and hold that based upon the evidence of record, petitioner is entitled to receive approval of its certificate of need application. We therefore remand this case to the agency for further action consistent with this opinion.

Reversed and remanded.

Judges ARNOLD and JOHNSON concur.