JOSEPH E. TEAGUE, JR., P.E., C.M., Petitioner-Appellant v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent-Appellee

No. COA05-522

(Filed 18 April 2006)

**1. Public Officers and Employees— dismissal of state employee—personal misconduct—final agency decision**

The trial court did not err in a case involving the dismissal of a state employee for personal misconduct by determining that the ALJ's recommended decision became the final decision of the State Personnel Commission under N.C.G.S. § 150B-44, because:

(1) after failing to reach a majority vote during its 20 February 2003 meeting, the Commission issued a Memorandum of Consideration on 1 April 2003, and absent any findings of fact or conclusions of law, the Memorandum of Consideration cannot be considered a final decision under N.C.G.S. § 150B-36(b); (2) in order to protect petitioner dismissed employee from unreasonable delay, N.C.G.S. § 150B-44 provided petitioner the remedy of making the ALJ's recommended decision the final decision of the agency so the administrative appeals process could continue; and (3) this situation, in which an administrative agency failed to issue a final decision within the statutorily prescribed period, is the situation N.C.G.S. § 150B-44 was intended to remedy.

2. **Administrative Law— whole record review—de novo review—dismissal of state employee**

The trial court did not err in a case involving the dismissal of a state employee for personal misconduct by using the whole record standard of review instead of reviewing the matter de novo, because: (1) in cases where petitioner contends the agency decision was not supported by substantial evidence, the whole record test is the proper standard of review, and the first ground for relief in his petition stated that the ALJ's findings of fact and conclusions of law were not supported by evidence in the record; (2) as to petitioner's second ground for relief, the trial court properly employed a de novo review of the question of the application of N.C.G.S. § 150B-44; and (3) the trial court's erroneous application of the standard of review would not automatically necessitate remand, provided the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of the decision under the applicable provisions of N.C.G.S. § 150B-51(b), and the Court of Appeals' de novo review of the issue revealed no error.

3. **Public Officers and Employees— dismissal of state employee—just cause**

A whole record review revealed that the trial court did not err by determining there was sufficient evidence to support the ALJ's findings and conclusions justifying petitioner state employee's dismissal for just cause, because: (1) the State Personnel Act permits disciplinary action against career state employees for just cause which may consist of unacceptable personal conduct; (2) petitioner's denial of knowledge of the statement of understand-

ing was not credible when he was a computer security liaison for DOT for ten years, he signed the internet policy which explicitly referenced the statement of understanding, and he was advised by a DOT computer systems administrator on several occasions that he needed to obtain permission to install software; (3) the ALJ explained her disbelief of petitioner based on his educational background, intellectual abilities, and on-the-job computer experience, and it is within the ALJ's discretion to analyze the credibility of witnesses and to resolve conflicting testimony; (4) petitioner's own testimony supported the finding that he did not ask or get permission to install the software discovered on his computer; and (5) evidence supported the finding that petitioner's installation of servers and protocols breached DOT's network security and exposed DOT's systems to invasion by external computer hackers.

Appeal by petitioner from order entered 18 February 2005 by Judge Henry W. Hight, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 9 January 2006.

*Biggers & Hunter, PLLC, by John C. Hunter, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Tina A. Krasner, for respondent-appellee.*

McGEE, Judge.

Joseph E. Teague (Teague) was employed as an engineer by the North Carolina Department of Transportation (DOT) in the Program Analysis Unit. By letter dated 17 May 2001, DOT dismissed Teague from employment based on unacceptable personal conduct. Teague filed a grievance, and DOT upheld its dismissal decision. Thereafter, Teague filed a petition for a contested case hearing in the Office of Administrative Hearings. A hearing was held before an administrative law judge (the ALJ) on 9 and 10 April 2002. The ALJ rendered a decision on 17 October 2002 upholding DOT's dismissal of Teague for unacceptable personal conduct.

The State Personnel Commission (the Commission) considered the decision of the ALJ at its 20 February 2003 meeting. The Commission issued a Memorandum of Consideration on 1 April 2003, stating that four members of the Commission voted to adopt the ALJ's decision and four members voted against the adoption of the ALJ's deci-

sion. The Memorandum of Consideration continued: "Being unable to sustain a majority in favor of a motion to adopt or reject the [ALJ's] decision, the Commission took no further action with regard to the recommended decision." The Memorandum of Consideration concluded: "Note: G.S. 150B-44 provides the following: If an agency subject to Article 3 of this Chapter has not made a final decision within [the time limit specified in the statute], the agency is considered to have adopted the [ALJ's] recommended decision as the agency's final decision." Teague filed a petition for judicial review. The trial court determined the ALJ's decision to be the final agency decision, and affirmed the ALJ's decision. Teague appeals.

The evidence before the ALJ tended to show that Teague was continuously employed by DOT from 1988 until his discharge in 2001. Teague received an A.B.S. degree in Mechanical Engineering from Georgia Tech University, an M.B.A. in Economics from the University of Oklahoma, and a Master's Degree in Civil Engineering from North Carolina State University. From 1998 until 2000, Teague's responsibilities at DOT involved computer security and software licensing issues. On 11 April 2001, DOT staff conducted a routine, random scan of local ports and Internet Protocol addresses in Teague's unit. As a result of the scan and a subsequent inspection of Teague's computer, DOT discovered nineteen software applications on Teague's computer that were not issued by DOT. Teague was placed on "investigatory placement" with pay while a full investigatory audit of Teague's computer was completed. Ultimately, Teague was dismissed from his employment for unacceptable personal conduct, specifically for the willful violation of known or written work rules.

The ALJ determined that Teague willfully violated two sets of work rules: (1) a document entitled "Internet and Email Policy and Procedure" (Internet Policy); and (2) a document entitled "Statement of Understanding Regarding Use of Computers" (Statement of Understanding). The ALJ found that Teague admitted to reading and signing the Internet Policy, the first paragraph of which stated that the Internet Policy was to be understood "[a]s a supplement to and in conjunction with" the Statement of Understanding.

I.

[1] Teague first assigns error to the trial court's determination that the ALJ's recommended decision became the final decision of the Commission pursuant to N.C. Gen. Stat. § 150B-44. The statute provides that "[i]f an agency subject to Article 3 of [Chapter 150B] has

not made a final decision within the [relevant] time limit[], the agency is considered to have adopted the [ALJ's] decision as the agency's final decision." N.C. Gen. Stat. § 150B-44 (2005). In interpreting the statute, our Court has held that, "[b]ecause the primary purpose of [Chapter 150B] is to provide procedural protection for persons aggrieved by an agency decision, the provisions thereof are to be 'liberally construed . . . to preserve and effectuate such right.' " *Holland Group v. N.C. Dept. of Administration*, 130 N.C. App. 721, 725, 504 S.E.2d 300, 304 (1998) (quoting *Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 594, 447 S.E.2d 768, 783 (1994)). Moreover, "[t]he plain language of [N.C.]G.S. § 150-44 indicates the section is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay." *Id.*; *see Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 653, 551 S.E.2d 535, 538, *disc. review denied*, 354 N.C. 365, 556 S.E.2d 575 (2001) (finding "no ambiguity in [the] statutory language [of N.C.G.S. § 150-44] that would give the trial court need to further explore legislative intent").

Teague argues that the Commission's act of voting, and failure to reach a majority vote, was in fact a final decision that DOT failed to carry its burden of showing just cause for Teague's dismissal. Therefore, he contends N.C.G.S. § 150B-44 does not apply. This is incorrect. The plain language of N.C.G.S. § 150B-44 provides that an agency, such as the Commission, that is subject to Article 3, "has 60 days from the day it receives the official record in a contested case . . . or 60 days after its next regularly scheduled meeting, whichever is longer, to make a final decision in the case." N.C.G.S. § 150B-44. N.C. Gen. Stat. § 150B-36(b) (2005) provides that "a final decision in a contested case shall be made by the agency in writing . . . and *shall include findings of fact and conclusions of law.*" (emphasis added). Our Court has explained that N.C.G.S. § 150B-36(b) "clearly requires that a final agency decision be in writing and include findings of fact and conclusions of law." *Walton v. N.C. State Treasurer*, 176 N.C. App. 273, 276, 625 S.E.2d 883, 885 (2006) (holding that an oral announcement by an agency subject to Article 3 did not constitute a "final decision" under N.C.G.S. § 150B-36(b)).

In the present case, the Commission received the official record on 18 December 2002 and heard the case at its next regularly scheduled meeting on 20 February 2003. Therefore, the Commission had 60 days from its 20 February 2003 meeting in which to render a final decision in writing, including findings of fact and conclusions of law.

*See* N.C.G.S. § 150B-36(b); N.C.G.S. § 150B-44. After failing to reach a majority vote during its 20 February 2003 meeting, the Commission issued a Memorandum of Consideration on 1 April 2003. The Memorandum of Consideration did not recite any findings of fact or conclusions of law. Nor did it include any language that could be construed as a finding of fact or conclusion of law. Absent any findings of fact or conclusions of law, the Memorandum of Consideration cannot be considered a final decision under N.C.G.S. § 150B-36(b).

Because the Memorandum of Consideration did not constitute a final decision under N.C.G.S. § 150B-36, the Commission failed to make a final decision within the time limit set forth in N.C.G.S. § 150B-44. Accordingly, in order to protect Teague from unreasonable delay resulting from the Commission's failure to issue a final decision, the Commission "[was] considered to have adopted the [ALJ's] decision as the agency's final decision." N.C.G.S. § 150B-44. The ALJ's recommended decision became the final decision in the case "by operation of law." *Occaneechi*, 145 N.C. App. at 655, 551 S.E.2d at 539.

Teague correctly asserts that, under the State Personnel Act, the Commission had the burden of showing Teague was discharged for just cause. N.C. Gen. Stat. § 126-35 states in pertinent part that

(a) No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. . . .

. . . .

(d) In contested cases conducted subject to Chapter 150B of the General Statutes, the burden of showing that a career State employee subject to the State Personnel Act was discharged, suspended, or demoted for just cause rests with the department or agency employer.

N.C. Gen. Stat. § 126-35 (2005).

Our Supreme Court has held that, for the purpose of procedural due process, "[t]he North Carolina General Assembly created, by enactment of the State Personnel Act, a constitutionally protected 'property' interest in the continued employment of career State employees." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998). In the present case, Teague does not raise an argument as to procedural due process, but rather argues

TEAGUE v. N.C. DEP'T OF TRANSP.

[177 N.C. App. 215 (2006)]

that N.C.G.S. § 150-44 cannot be interpreted to apply to his situation because there was no prescribed delay by the Commission. We disagree.

We have determined that the Commission failed to issue a final decision within the meaning of N.C.G.S. § 150B-36(b). In order to protect Teague from unreasonable delay, N.C.G.S. § 150B-44 provided Teague the remedy of making the ALJ's recommended decision the final decision of the agency, so the administrative appeals process could continue. This situation, in which an administrative agency failed to issue a final decision within the statutorily prescribed period, is the situation N.C.G.S. § 150B-44 was intended to remedy. *See Holland,* 130 N.C. App. at 725, 504 S.E.2d at 304 (stating that N.C.G.S. § 150B-44 "is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay"). This assignment of error is overruled.

II.

**[2]** Teague next argues the trial court erred in using the "whole record" standard of review in reviewing his petition. Teague contends the trial court should have reviewed the matter *de novo.*

When reviewing a trial court's order affirming a decision by an administrative agency, our Court must "examine the trial court's order for errors of law and determine whether the trial court exercised the appropriate scope of review and whether the trial court properly applied this standard." *Hilliard v. N.C. Dep't of Corr.,* 173 N.C. App. 594, 596, 620 S.E.2d 14, 17 (2005).

The particular legal standard applied by a reviewing trial court depends on the type of issues presented for judicial review. *Powell v. N.C. Dept. of Transportation,* 347 N.C. 614, 623, 499 S.E.2d 180, 185 (1998). In cases where a petitioner contends an agency decision was based on an error of law, the trial court conducts a *de novo* review. *Air-A-Plane Corp. v. N.C. Dept. of E.H.N.R.,* 118 N.C. App. 118, 124, 454 S.E.2d 297, 301, *disc. review denied,* 340 N.C. 358, 458 S.E.2d 184 (1995). In cases where the petitioner contends the agency decision was not supported by substantial evidence, the whole record test is the proper standard of review. N.C. Gen. Stat. § 150B-51(b)(5) (2005); *Dillingham v. N.C. Dep't of Human Res.,* 132 N.C. App. 704, 708, 513 S.E.2d 823, 826 (1999).

In the present case, Teague asserted two alternative grounds for relief in his petition: (1) the ALJ's findings of fact and conclusions of

law were not supported by evidence in the record; and (2) N.C.G.S. § 150B-44 did not apply to the Commission's act of voting and issuance of the Memorandum of Consideration. As to the first ground, the trial court stated that "[t]he appropriate standard of review is whether the decision is supported by the substantial evidence in view of the entire record." We hold that this determination was correct under N.C.G.S. § 150B-51(b)(5).

As to the second ground, the trial court did not specify that it was using a *de novo* review, but addressed the matter in depth in its order and determined that "the recommended decision of the ALJ in favor of the DOT became the final decision by operation of law . . . in accordance with *Occaneechi.*" We find that the trial court properly employed a *de novo* review of the question of the application of N.C.G.S. § 150B-44. Moreover, our Supreme Court recently held that

> it is well settled that the trial court's erroneous application of the standard of review does not automatically necessitate remand, provided the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b).

*N.C. Dep't of Env't and Natural Res. v. Carroll*, 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004). As discussed above, our own *de novo* review of the issue reveals no error in the application of N.C.G.S. § 150B-44 to the present case. This assignment of error is overruled.

### III.

[3] Teague argues that, even employing a whole record review, the trial court erred in determining there was sufficient evidence to support his dismissal for just cause. The State Personnel Act permits disciplinary action against career state employees for just cause. N.C.G.S. § 126-35. Just cause may consist of "unacceptable personal conduct." 25 N.C.A.C. 1J.0604(b) (August 2005). Unacceptable personal conduct includes "the willful violation of known or written work rules[.]" 25 N.C.A.C. 1J.0614(i) (August 2005). Our Court has held that a willful violation of known or written work rules occurs when an employee "willfully takes action which violates the rule and does not require that the employee intend [the] conduct to violate the work rule." *Hilliard*, 173 N.C. App. at 597, 620 S.E.2d at 17.

" '[T]he "whole record" test requires the reviewing court to examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." ' " *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)). Substantial evidence is evidence that a reasonable mind would deem adequate to support a particular conclusion. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). In conducting a whole record review, a trial court " 'may not substitute its judgment for the agency's,' even if a different conclusion may result under a whole record review." *Gordon v. N.C. Dep't of Corr.*, 173 N.C. App. 22, 34, 618 S.E.2d 280, 289 (2005) (quoting *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004)).

In his petition for judicial review, Teague excepted to four findings of fact and four conclusions of law. The first three contested findings assert that Teague was, in fact, aware of the terms of the Statement of Understanding. Teague contends the only direct evidence in the record on this issue was Teague's own testimony that he had never seen nor signed the Statement of Understanding. He further argues that DOT did not present a copy of the Statement of Understanding signed by Teague. For the reasons discussed below, we find no error.

In finding number twenty-three, the ALJ explained that she found Teague's denial of knowledge of the Statement of Understanding "simply not credible for several reasons." Among those reasons were: (1) Teague was a Computer Security Liaison for DOT for ten years; (2) Teague signed the Internet Policy, which explicitly referenced the Statement of Understanding; and (3) Teague was advised by a DOT computer systems administrator on several occasions that Teague needed to obtain permission to install software, which was part of the substance of the Statement of Understanding. Each of these reasons is supported by evidence of record. Moreover, the credibility of witnesses and the resolution of conflicting evidence is a matter for the agency, and not for the reviewing court. *Huntington Manor of Murphy v. N.C. Dept. of Human Resources*, 99 N.C. App. 52, 57, 393 S.E.2d 104, 107 (1990).

Similarly, in finding number twenty-four, the ALJ discredited Teague's assertion that Teague was unaware he was required to

obtain his supervisor's approval before installing software onto his work computer. The ALJ explained that her disbelief of Teague was based on Teague's educational background, intellectual abilities, and on-the-job computer experience. This finding was supported by evidence of record, and it was within the ALJ's discretion to analyze the credibility of witnesses and to resolve conflicting testimony. *Id.* Accordingly, the trial court did not err in upholding finding number twenty-four.

Finding twenty-five, that Teague admitted not having permission, or even asking permission, to install the software discovered on his computer, is supported by Teague's own testimony as follows:

Q. In fact, did anyone ever explicitly give you permission to put any of these items that are listed in this time line—any of these software applications onto your own computer?

A. No. I never asked.

Q. You never asked permission?

A. No.

Therefore, the trial court did not err in upholding finding number twenty-five.

In finding number thirty-one, the ALJ found Teague's unauthorized installation of applications such as remote access servers, virtual private networking servers, and Point-to-Point Protocol was "inconsistent with [DOT's] objective to insure its files and computer network system were properly protected by the appropriate security devices[,]" in violation of the Internet Policy. This finding is supported by evidence that Teague did not have permission to install such software and that installing the servers and protocols breached DOT's network security and exposed DOT's systems to invasion by external computer hackers. The trial court did not err in upholding finding number thirty-one.

Conclusion of law number seven, which simply quotes language from the Statement of Understanding, was supported by substantial evidence, and was therefore correctly upheld by the trial court. Conclusion eight, that Teague was dismissed for unacceptable conduct, was based upon the finding that Teague knowingly violated the Statement of Understanding. As we uphold the finding that Teague was aware of the Statement of Understanding, we likewise find no error in the trial court's upholding this conclusion, as well as conclu-

sion nine, which stated that DOT had just cause to dismiss Teague for unacceptable conduct, which constitutes just cause under N.C. Gen. Stat. § 126-35. Finally, conclusion eleven, that Teague knowingly violated the Internet Policy, is supported by evidence that Teague signed the Internet Policy, which stated that "use of all telecommunications and computer systems and resources must be in support of NCDOT activities and consistent with NCDOT objectives" and that "[c]omputing systems include, but are not limited to host computers, file servers, workstations, . . . and internal and external communication networks." Substantial evidence of the security risk posed by Teague's installation of software on his computer system further supports this conclusion. Accordingly, the trial court did not err in affirming conclusion eleven.

Affirmed.

Chief Judge MARTIN and Judge STEELMAN concur.